# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 6982 | **DATE** | 1/3/2011 |
| **CASE TITLE** | Gregory Smith vs. Jalate Hunt, et al | | |

**DOCKET ENTRY TEXT**

During the Final Pretrial Conference held in this case on December 15, 2010, the Court made the following rulings:

The Court grants Plaintiff's oral Motion to Voluntarily Dismiss Counts II (common law battery), V (common law battery), and VIII (indemnification) of Smith's Second Amended Complaint. The Court grants Plaintiff's oral Motion to Voluntarily Dismiss any claim for punitive damages against the Defendants in this case. The Court grants in part, denies in part, and takes under advisement in part Plaintiff's Motions in Limine [77]. The Court grants in part, denies in part, and takes under advisement in part Defendants' oral motion to exclude witness Myron Perkins from testifying about the December 28, 2007 incident and Defendants' three Motions in Limine [83].

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

During the Final Pretrial Conference held in this case on December 15, 2010, the Court made the following rulings:

The Court granted Plaintiff Gregory Smith's ("Smith") oral Motion to Voluntarily Dismiss Counts II (common law battery), V (common law battery), and VIII (indemnification) of Smith's Second Amended Complaint. In exchange, the City of Chicago stipulated that during the two incidents at issue in this case, the Officer Defendants, JaLate Hunt, Jose Cortes, Richard Dowling, Joseph Martis, Daniel A. Binfa, Danielle N. Philp, and William R. Whelehan ("the Defendants") were acting within the scope of their employment and that it would therefore indemnify the Defendants if the jury finds them liable. The Court also granted Smith's oral Motion to Voluntarily Dismiss any claim for punitive damages against the Defendants in this case.

The Court granted Smith's Motion in Limine to bar Defendants from arguing, inferring, questioning any witness, or introducing any evidence or opinion concerning the War on Drugs or that the Englewood neighborhood is drug-infested (Mot. 1). Similarly, the Court granted, over no objection from the Defendants, Smith's Motions in Limine to bar evidence or argument regarding drug sales near Harper High School (Mot. 3), Smith's admission to Holy Cross Hospital on August 13, 2004 (Mot. 12), and the fact that witness Carolyn

Carradine has a false arrest and malicious prosecution lawsuit pending against Joseph Martis and Jose Cortes (Mot. 15). Should the testimony at trial open the door to any of this evidence or argument, the parties are instructed to raise the issue with the Court outside the presence of the jury before proceeding.

The Court granted in part, denied in part, and took under advisement in part Smith's Motion in Limine to exclude evidence that witness Robert Priest ("Priest") previously used or purchased narcotics in the Englewood area (Mot. 2). Specifically, the Defendants are allowed to cross-examine Priest as to his prior felony conviction. The Defendants are not, however, allowed to question Priest about his own drug use. The Court reserved for trial the issue of whether the Defendants are allowed to question Priest about an individual named Boo-Man. Before asking Priest any questions about Boo-Man, the Defendants are instructed to raise the issue with the Court outside the presence of the jury.

The Court granted in part and took under advisement in part Smith's Motions to exclude evidence relating to the financial status of the parties (Mot. 4), Smith's work for cash (Mot. 6), and Smith's relationship with his adult children (Mot. 7). The Court found that without more information, these facts are irrelevant. The Court acknowledged, however, that evidence as to bias is always relevant. As such, the Court reserved for trial a ruling on whether such evidence demonstrates bias on Smith's part or a motive for filing this lawsuit. Should evidence of bias arise at trial, the Defendants may explore that theory in a limited fashion after rasing the issue with the Court outside the presence of the jury. The Court notes that the Defendants did not object to Smith's Motions to exclude evidence that he worked for cash or his relationship with his children.

The Court granted Smith's Motion in Limine to exclude any evidence or comments as to Smith's attorney's fee agreement (Mot. 5). The Court concluded that such evidence is irrelevant and comes dangerously close to interfering with Smith's right to counsel in his underlying criminal case.

The Court denied Smith's Motion to exclude the fact that he was on parole in December of 2007, that a parole warrant was issued for his arrest before December 7, 2007, or any requirements of his parole (Mot. 8). The Court concluded that this evidence is relevant to why the Defendants stopped Smith on December 7, 2007 and that it is not overly prejudicial.

The Court denied Smith's Motion to exclude evidence of Smith's heroin use prior to his arrest on December 7, 2007 (Mot. 9), finding that such evidence is relevant to Smith's excessive force and medical care claims. Specifically, the Court concluded that evidence of impairment is relevant to Smith's excessive force claim because it goes to how Smith interacted with the Defendants and therefore the reasonableness of the Defendants' use of force. *See Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979) (in a 42 U.S.C. §1983 excessive force case, evidence that the plaintiff was legally intoxicated at the time of the incident "was relevant to the issue of the reasonableness of the plaintiff's conduct at that time," and "tend[ed] to make more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted himself in such a manner as to place the defendant reasonably in fear of his life"); *see also*, *e.g.*, *More v. City of Braidwood*, No. 08 C 5203, 2010 WL 3547964, at *3 (N.D. Ill. Sept. 7, 2010) (Manning, J.) (evidence of the plaintiff's intoxication during the incident at issue was "relevant to the officers' state of mind and the excessive force inquiry"); *Orlowski v. Eriksen*, No. 07 C 4015, 2009 WL 2366050, at *2 (N.D. Ill. July 31, 2009) (Keys, J.) (the plaintiff's "state of sobriety on the date of his arrest is directly tied to his claims of arrest without probable cause, unreasonable use of force, and malicious prosecution"); *Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1073 (N.D. Ill. 1999) (citation omitted) (evidence that the plaintiff consumed heroin before and during his arrest could be significant "in determining whether he was 'vigorously and actively' resisting arrest"). As to Smith's medical care claim, the evidence is relevant to Smith's ability to tolerate pain and to perceive and recall the events of that day. *See Jarrett v. United States*, 822 F.2d 1438, 1446 (7th Cir. 1987) (witness may be cross-examined about

his use of drugs if the evidence tests his "ability to perceive the underlying events and testify lucidly at the trial").

The fact that the Defendants will not offer a toxicology screen to demonstrate the precise amount of heroin in Smith's system at the time of the incident or an expert to testify as how, in his or her opinion, the heroin would affect Smith is immaterial in an excessive force and medical care case. *C.f. Palmquist v. Selvik*, 111 F.3d 1332, 1341-42 (7th Cir. 1997) (in an excessive force case, "foundational" or "background" evidence of the plaintiff's alcohol and marijuana on the day of the incident, including "specification of the amount of alcohol and marijuana in his body" could be cumulative where the jury heard three witnesses testify that the defendant was "drunk" or "high"). Here, Smith *admitted to* using heroin five-to-seven hours before the December 7, 2010 incident. That fact alone is useful to the jury in determining whether the Defendants used excessive force and whether Smith perceived his alleged injury and it is not unduly prejudicial.

The Court granted, however, without objection from the Defendants, Smith's Motion in Limine to exclude evidence about any other prior drug use by Smith (Mot. 10). *See, e.g.*, *United States v. Robinson*, 956 F.2d 1388, 1397 (7th Cir. 1992) (citation omitted) ("The district court may bar cross-examination about a witness' illegal drug use when it is used 'for the sole purpose of making a general character attack.'").

The Court granted in part and denied in part Smith's Motion to exclude items found on Smith at the time of his December 7, 2007 arrest (Mot. 11). Specifically, the Court granted, without objection, Smith's Motion to exclude evidence that, at the time of his arrest, he was in possession of a link card and an iPod. The Court, however, denied Smith's Motion as to the $700 in cash in his possession, concluding that such evidence is not overly prejudicial, particularly in light of the fact that the jury will hear about Smith's prior drug convictions.

The Court granted in part and took under advisement in part Smith's Motion in Limine to bar the details of Smith's prior felony convictions rather than the fact of the conviction itself (Mot. 13). The Defendants concede that, as to all convictions other than the one relating to Smith's December 7, 2007 and December 28, 2007 arrests, they will only introduce the fact that each conviction exists, its date, and the statute upon which it was based. *See Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987) The Defendants agree not to introduce the details of each crime. The Court took under advisement, however, whether the Defendants would be allowed to cross-examine Smith on the details of his convictions arising from the December 7, 2007 and December 28, 2007 arrests. After reviewing the case law, the Court reserves ruling on this Motion until trial, with the following guidelines. The Defendants shall only be permitted to probe into the details of Smith's underlying convictions if: (1) Smith opens the door to such impeachment by attempting to "explain away the prior convictions by giving his . . . own version of events[,]" *United States v. Smith*, 454 F.3d 707, 716-17 (7th Cir. 2006); *Wilson v. City of Chicago*, 6 F.3d 1233, 1237 (7th Cir. 1993) (a plaintiff may "not be allowed to depreciate the gravity of his crimes, as by claiming that he didn't *really* murder the policemen . . . ."); or (2) if the details of Smith's underlying convictions bear directly on his credibility. *See Wilson*, 6 F.3d at 1237. Before beginning this line of questioning the Defendants must raise the issue with the Court outside the presence of the jury.

The Court granted Smith's Motion to bar any reference to the Defendants as "Gang" Officers (Mot. 14). The Court found that such evidence is not relevant because this is not a gang case and any mention of gang activity in Chicago is prejudicial and may inflame the jury. Should the Defendants testify, those assigned to the Gang Unit shall refer to themselves as Tactical Officers.

The Court took under advisement Smith's Motion in Limine to bar the opinions of the Defendants' expert, Michael I. Vender, M.D ("Dr. Vender") (Mot. 16). The Court found that Dr. Vender, who is a board-certified hand surgeon, is qualified as an expert. Nevertheless, the Court granted a limited *Daubert* hearing on the basis

for the conclusions in Dr. Vender's report. The Court held the hearing on December 29, 2010, and denied Smith's Motion on January 3, 2011. (*See* R. 90.)

The Defendants orally moved to exclude witness Myron Perkins from testifying about the December 28, 2007 incident. On December 22, 2010, the Defendants filed three Motions in Limine seeking to exclude the following: (1) evidence challenging the consent to search Smith's home during the December 28, 2007 incident (Mot. 1); (2) witness Myron Perkins's ("Perkins") testimony about the December 28, 2007 incident (Mot. 2); and (3) any testimony from Theodis Jackson ("Jackson") (Mot. 3). After reviewing the Defendants' Motions and Smith's Response, the Court grants in part, denies in part, and takes under advisement in part the Defendants' Motions. Specifically, the Court grants the Defendants' Motion as to testimony from Jackson because Smith failed to disclose Jackson as a witness in his Initial Disclosures. As the Court concluded in its ruling on the Defendants' Summary Judgment Motion, (R. 66 at 8 n.2.), Smith has not offered any justification for his failure to disclose Jackson as a witness and the Defendants would be prejudiced by the lack of disclosure. For that reason, Jackson is barred from testifying at trial. *See* Fed. R. Civ. P. 37(c)(1). The Court, however, denies the Defendants' Motion as to Perkins's testimony. Smith disclosed Perkins as a witness and the fact that the Defendants failed to throughly explore Perkins's testimony does not preclude him from testifying as to the December 28, 2007 incident. The Court takes under advisement the Defendants' Motion as to evidence challenging the consent to search Smith's home on December 28, 2007.